The first case for argument today is Lam v. Gower. So, counsel, whenever you're ready, please proceed. Good morning. May it please the court, my name is Gabriel Bassan, and I represent Mr. Lam in this matter. May I reserve two minutes for rebuttal? We'll try to help you, but keep your eye on the clock. I'll try to do that, sir. The state court ruling in this case was objectively unreasonable because every fact in this case is as indicative or even more indicative of a testimonial statement by the complaining witness than the facts in Hammond v. Indiana, which is the Supreme Court case which sets the marker of what is testimonial. Now, it's frequently the bane of petitioners in this kind of case to be able to prove what is objectively unreasonable because an opinion is difficult to show to be objectively unreasonable. But in this case, I don't believe we have that problem because when you look at what's a testimonial statement, you have a spectrum of factual possibilities, and the Supreme Court has given us two markers, Hammond v. Indiana, as to what facts show testimonial statement, and Davis v. Washington, the reverse, what facts show a statement that is non-testimonial. And presumably, if you have a case which factually is between the two, any ruling by the lower court would be objectively reasonable. But as you move closer and closer to one of these markers by the Supreme Court, a decision by a lower court which is not consistent with the Supreme Court becomes more and more unreasonable until the facts of the case at bar are equivalent to the facts, in this case, of Hammond, in which case I think we can say with perfect certainty that the ruling is objectively unreasonable. Counsel, as you know, the argument is that Yang's first statement was not testimonial because it was an ongoing emergency. What's your response to that? I think that that is completely unwarranted in this case. Unlike the Hammond case, my client was not at large, and in the Hammond case he was actually in the house still and still trying to get at his wife in also a domestic violence case. In this case, before the statements were even made, my client was handcuffed and placed in the back of a squad car. So is it your position that there was no emergency because your client was in custody? That's correct. That's correct. Is there a case where the Court said that no emergency existed? Yeah, Hammond. Because in Hammond the suspect is in custody? Well, in Hammond, that's what's interesting. Our case is even further along the testimonial line than in Hammond. In Hammond, the Court says there's no longer an ongoing emergency because the police are on scene and have determined, have settled things down and have determined who and where the suspect is. But did Yang know that your client was in custody? She was crying. She was upset. She was afraid. Well, two things. There is nothing in the record that specifically says she saw my client. However, we do know that the statement was taken outside of the home. Okay. We know that. And we know that my client was in a police car which was outside of the home. So it seems to be that. She didn't know that. Yes, we do. Well, but she had just fled the home, hadn't she? She was actually in the driveway of the next-door neighbor. Yeah. So she'd run over there from the home. Right, from the police car. But the other thing is this. Common sense says let's assume that maybe she is upset because she doesn't know where the client is. And she says that to the cop, the police officer. The first thing he's going to say, oh, he's right there. We've locked him up. Don't worry about that. Well, could there be anything else that would be an emergency? She obviously had scratches and bruises, and there were weapons in the house. Well, at the time of the statement, the police didn't know that. Well, isn't that what they ask questions? He's first arriving at the scene. He's trying to find out what happened. Right. And he has a person who's emotional, scratched and bruised, and claiming she's been the victim of domestic violence. Claiming that she'd been a victim of domestic violence one to three days before. Well, the officer doesn't know that until he asks her. Well, that's the case. But in other words, the police officer comes. The police officer, by the way, is the important one as to whether he knows whether my client's in custody, which clearly he does, because then he's — what questions are he — is he asking? In other words, the Supreme Court said when the police ask questions to find the suspect or make sure that he's not going to harm the suspect or harm the community at large, those are facts that are made to do police work in terms of finding that suspect, stopping the emergency. So the emergency is exclusive and it revolves around the suspect only? When assessing whether there's an emergency, when the police are talking to the victim, is it only based on the location of the suspect? No. Well, I think that's — I think that is a very strong, large factor. I guess there could be other factors, but that is the overwhelming factor, and that's what the Supreme Court said in Hammond. They said the police know, even though he is not arrested like my client, the police have arrived on scene and they have stopped the fight or the fight is no longer going on. So that emergency, which is what they were called for, is no longer going on. Similarly, in this case, the emergency that the woman made the call for is no longer going on. The police know that because they've arrested him and placed him in the car. With respect, counsel, I mean, I think Justice Scalia said something of a monster afoot with Crawford, but be that as it may, here we have a situation where somebody is highly emotional. What she said was not, boy, I'm going to use this to testify against my friend or husband or whatever he was. She's just emoting. That's the very kind of thing that at least my understanding is Crawford's not designed to cover. Crawford's designed to cover situations where you have somebody who's not there, you can't cross-examine, and yet you've got critical evidence here. Isn't that the difference here? I mean, it's the emotion in this case of Yang rather than the custody of your client. Respectfully, I disagree, Your Honor. Okay. And I think that many of us grew up professionally, jurisprudentially, under the paradigm of map the Ohio, where if you could place the statement into a common hearsay objection, like an excited utterance, it was good. Right. That's no longer the law. What's the limiting principle? But you have to sit down in a minute. The limiting principle is it doesn't matter if she's excited or not. And by the way, remember that the ---- No, no, no. When would it be admissible? What's the principle? You're writing the opinion. What's the principle that would say that this would be an admissible? Yeah, that she's not excited when she's bruised and she's run away from the house. The excitement, with due respect, the excitement is irrelevant. What it is is that, like in Davis, she's saying he's at large. I don't know where he is. He's running down the street. But what do you want, if she's not in immediate danger? Correct. Then it's testimonial? It's testimonial because she's not in immediate danger and because what she's talking about is not what's happening now. She's talking about what happened before. Maybe she's excited. Maybe she's, you know, and whether it's fear or methamphetamine, we don't know, but she's excited. And she's saying what happened one day ago, two days ago, three days ago is this. Do you want to save any of your time? It's up to you. Yes, I do. Okay. Good morning. May it please the Court. Justin Riley on behalf of the warden. The principle at play is what is the primary purpose in the interrogation? The primary purpose is Michigan v. Bryant. The state court and the federal court below found that the primary purpose in this case was to solve an ongoing emergency and for safety of the victim and safety of the officers. Here's what had been going on for the last 24 to 36 hours. The petitioner had handcuffed the victim around her house, had stolen her identification and wouldn't give it back to her, had been beating her for the better part of the last couple of days. She was covered in bruises and scratches. She had tried to escape once to a family member's house, tried to come back and get her things. He was there again and had choked her the morning that the law enforcement officials showed up. Well, let's talk about what happened at the time of the interview. Okay. The primary purpose, if it's found not to be testimonial, must be to enable police assistance to meet an ongoing emergency. Yes. So that's my question. What police assistance was Officer Dugaman looking to provide the victim after the defendant was in custody? The short answer is after he wasn't in custody, he was being detained. Yes, he was in handcuffs, he was in the back of a car, but he wasn't under arrest. And so his custody was temporary. The ongoing emergency was the last 48 hours, and the primary purpose of the victim talking to law enforcement was to effect her escape. She couldn't escape. She couldn't get her ID back. She couldn't get back to the house without him handcuffing her, beating her. She called 911, and this was the triggering event that brought law enforcement out. She called 911 because she told somebody at a neighboring house, he's going to kill me, call 911. I'm sorry, go ahead. He's in the police car in handcuffs. She doesn't know that. Who doesn't know that? The victim does not know that. We're looking at what the police officer intent, though, aren't we? Aren't we looking at why the police officer is asking her these questions? The police officer asked her one question, what's going on? That's it. There were two different interviews separated by a search of the house. In the first interview, the law enforcement said, I showed up, I contacted her, I said, what's going on? Well, regardless of what he asked her, we're looking to determine whether or not he was asking her questions to meet an ongoing emergency and to provide assistance. So what ongoing emergency was going on when he's in the police car in handcuffs? The ongoing emergency is every time the victim tried to escape, petitioner either handcuffed her to something or beat her up. But he's in the police car in handcuffs. She doesn't know that, and she doesn't know that when these police officers leave that he won't just do that again. You say she. We're not looking at what the victim knew. We're looking at what the police officer knew when he's asking her questions. Why is he asking her questions? What the primary purpose is, right? It's the totality of the circumstances. And so we look at what both parties knew. What the officer knew was. No, no, wait a minute. I thought what the focus on was what was the primary purpose of the police officer in asking the questions. Isn't that the focus? Isn't that what we want to know? Under the totality of the circumstances, that is one aspect of what we're looking for, the primary purpose of the questioning. Now, with a question like what's going on, a fair-minded jurist might argue what's going on is just trying to figure out, is there an emergency? The 911 call said that someone was going to kill me. So what you're saying, any time a police officer arrives on the scene, the first question is automatically non-testimonial because he's just trying to find out what's going on. There is no automatic rule. We have to look at the totality of the circumstances. But, yes, if a police officer. Well, in these circumstances, the victim is in, I mean, the suspect is in the vehicle, handcuffed, in police custody. Yes. So what is the emergency? The officer does not know what the danger is and who the danger is coming from. Remember, the victim didn't know that the Petitioner was in the police car. So they did not have a discussion about is that the guy who's beating you up? Is that the guy who's going to kill you? The only thing that the officer has when he comes up is there's a 911 call where a victim is saying, he's trying to kill me. He's been beating me up all day. I'm covered in bruises. That's the 911 call. So when did the ongoing emergency end? I don't know. A fair-minded jurist might argue the emergency ended when the police went to go and search the house and secured all the weapons and decided to arrest the victim. I'm sorry, the Petitioner. I want to just be sure I understand the government's position on this. You're saying it's not what the police officer knows, it's what the victim in this case knows, and that's how we measure the emergency? It is the totality of the circumstances, so it is what everybody knows. What everybody knows. Yes. Okay. What did the state court say? The state court said that due to the circumstances, the victim being covered in bruises, the 911 call saying he's going to kill me, and the officer coming up to say what's going on, that the circumstances showed that based on how frantic she was, how nonlinear her conversations were, that it was an excited utterance. Excited utterance? Excited utterance. It was non-testimony. Did it apply the applicable law? Yes. It looked at Hammond and Davis, compared the two, compared those two to this case, as did the district court, struggled with it. The state court found that about half of the testimonial statements the victim made were testimonial and did a harmless error analysis, and the beginning statements, the initial statements that the victim made to law enforcement, the state court found those to be not testimonial. And what do we have to decide, whether or not that was unreasonable? I believe that the argument is if the facts in this case are materially distinguishable from the facts in Hammond, so it's a contrary to analysis. And the district court did a great job pointing out the facts that are distinguishable in its ‑‑ I could summarize those. But to answer your question again in the context of that summary, the ongoing emergency was ongoing for about 24 to 36 hours. She just couldn't escape. She ‑‑ She couldn't escape the suspect who's in the police car in handcuffs? Yes. Are there any cases where the suspect has been in custody like this one where the court has said it's an ongoing emergency? No. I don't know of one. He was not under arrest. That was a temporary situation, and she didn't know about it. So she was trying to convince the officers, and inevitably, at the end of this conversation, she convinced the officers that she needed protection. She went into the house, gathered her belongings, and left. That was her goal. That was her primary purpose, to use Michigan v. Bryant's language, was to get these officers to protect her long enough to effectuate her escape. She had been beat up for the last 48 hours. She had been handcuffed to things. He had withheld her property. She needed protection to effectuate her escape. Is the emotional state of the victim important for deciding if there's an ongoing emergency? Some people may react to situations different than others, and if someone's acting calm and the other person is emotional when others wouldn't be, you think that's an indication of an ongoing emergency because someone is emotional? It's at least an indication. Does it definitively prove that it's an emergency situation if someone is frantic? No, but it's one of the circumstances under the totality of the circumstances test that one would view to see whether or not there was an ongoing emergency, whether or not this was testimonial, and its primary purpose. Remember, Hammond's primary purpose was investigation of past crimes for the purpose of prosecution. The result of the Hammond interaction was an affidavit that was the end result of this, and I see I'm out of time. The end result of this interaction was she was able to effectuate her escape. So was that the ongoing emergency effectuating her escape? Yes. Every time she tried to escape, she was either handcuffed or beaten for the last 48 hours. That's what the testimony showed. I've been trying to understand the ongoing emergency, and you're saying the ongoing emergency the officer confronted when he talked to her to interview her was her inability to escape. Yes. Every time she tried to get out of the house, he had taken her identification card. She may not have had as many resources as you and I may have had to leave a situation like this, and so she needed to get back to that house to gather her necessary belongings and get out. Every time she tried to do that, he either interviewed her. So I'm still puzzled by that because she was not in the house, and he was nowhere able to get near her because he was in the police car in handcuffs. I don't understand your ongoing emergency. She was trying to convince the officers to protect her long enough to do these things. She didn't know he was in the car. And remember, the officer's question to her was, what's going on? This is what's going on. I need to escape. Will you please help me escape? And then she did. At the end of this interaction, she left, and she never showed up to trial. Other questions by my colleagues? All right. Thank you, Counsel. Counsel, you have some rebuttal time. First of all, my brother for the government has said that she keeps asking to be able to escape. That's not in the record. We have no idea what she said to the officer, but that's certainly not in the record. Second of all, I think he brings up a good point. She was excited, and she was asking for help on an ongoing emergency in the 911 call that she made, okay, which is why we are not challenging the statement on the 911 call. That does pass muster in terms of being non-testimonial. And that's where the police get all the information they need to put my client in custody. Is there any case that says when the client is in custody, there's no longer an ongoing emergency? I'm not aware of any case that says that. But what I would urge the Court is, again, to go back to Hammond itself, when the Court said simply being on the scene and now making sure that the incident is no longer occurring is enough. So clearly, in this case, the facts are well beyond that when they put my client under arrest. I think functionally he was. Functionally he was. Had he been given Miranda? No. I don't think it was an official arrest. But I don't — I think he did not feel free to leave the scene. Well, do you agree that the issue that we have to decide is whether this is contrary to clearly established law? Or are you arguing that this was an unreasonable application of the facts? Well, two things. I'm arguing that this is unreasonable simply — and I've given you a chart, because I think that's a clear way of seeing it in my reply brief, that shows why the facts of this case are the same or more testimonial than in Hammond. So I'm saying it's objectively unreasonable because Hammond says it is. I have a second claim, which we have not been able to discuss at all, which is completely separate, that there was an unreasonable determination of the facts by the court because, as was mentioned, there were — besides the 911 call, the police officer arrives, he takes a statement, he goes into the home to search for evidence, then he takes a second statement. The state court says that second statement is not testimony because she's not excited anymore. Again, going back to the Map v. Ohio, that's not a criterion under Crawford. But what I have indicated in my brief and is clear, the police officer who took this statement says, I took all of her statements from the first and the second one. I took everything she said and put it in one statement. There is absolutely no way to determine which of the things she said came from the, quote, testimonial statement per the state court and which came from the non-testimonial statement. So for them to try and say that you can do that is an unreasonable application of the facts. I raised that in the state court below in a petition for a hearing based on the fact that they had messed up the facts. And I think it doesn't matter. Thank you. Thank you, colleagues. If anybody has any more questions. Thank you, counsel, for your argument. Thanks to both counsel. The case just argued is submitted.
judges: Schroeder, M. Smith, Rayes